UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

Floyd TOWNSEND,

       Plaintiff,

   -against-

William CLEMONS, et al.,

       Defendants.

-------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____
```

12-CV-03434 (RJS)(SN)

**REPORT AND
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE RICHARD J. SULLIVAN:**

  *Pro se* plaintiff Floyd Townsend ("Townsend") brings this action pursuant to 42 U.S.C. §

1983, alleging violation of his constitutional rights based on the conditions of his confinement

while in the custody of the New York City Department of Correction ("DOC").

  Townsend is suing three defendants: (1) William Clemons ("Clemons"), Warden of the

Robert N. Davoren Center ("RNDC"); (2) "Mr. Gumsdere" ("Gumsdere"), Deputy Warden of

Security at RNDC; and (3) the City of New York (the "City"). These defendants have moved to

dismiss Townsend's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The

Court's task is to weigh the plausibility of Townsend's allegations and determine to what extent

the defendants may be tied to the violations that he alleges. Because I conclude that Townsend

cannot state a plausible claim for violation of his constitutional rights under § 1983, I

recommended that defendants' motion to dismiss be GRANTED in its entirety.

## FACTUAL BACKGROUND

The following facts are assumed to be true for the purposes of this motion to dismiss. According to Townsend's complaint, the events giving rise to his claim occurred at the RNDC, in the "[M]ess Hall, Clinic, Intake Pens and 6 Lower," on October 14, 2011. (Complaint ("Compl.") at 2.)[1] This is the only date in Townsend's complaint.

Townsend's general allegations can be grouped into three categories. First, Townsend complains about food. He alleges that there is "often not enough[] food in the Mess Hall to accommodate the vast amount of detainees housed at [RNDC]." (Id. at 4.) Diabetic detainees, moreover, "are not issued the [necessary] low sugar diet foods to supplement their needs." (Id.)

Second, Townsend complains about sanitation. He alleges that, although linen sheets are exchanged every week, the blankets issued to detainees "are never washed or exchanged during the winter months," and are a "magnet for dust[,] bugs and other infectious germs." (Id.) When detainees are transferred from one housing area to another, their "belongings and property" are placed in those blankets, and dragged to the new area, accumulating dirt along the way. (Id.) Personal clothing, "which detainees . . . wear [throughout their] stay at the [RNDC]," also is "not allowed to be cleaned at [the] facility [laundry]." (Id. at 5.) Furthermore, "[m]any housing area showers are not [industrial-cleaned] due to [the] lack of cleaning agents that will combat bacteria." (Id.) Townsend also states that the "New York City Department of Corrections has failed to enforce The Environmental Health that was stated by Judge Harold Baer Jr." (Id. at 4.)

Third, Townsend complains about living conditions, alleging that the "pre-trial detainees['] living conditions are deplorable." (Id.) Detainees are "compel[led] to sleep close" to each other. (Id. at 5.)  There is overcrowding. (Id.) When detainees are awoken for court

---

[1] Because Townsend's complaint has inconsistent pagination, citations to the complaint will refer to the actual order of pages instead of the number that might be written on the bottom of a page.

appearances, "we are [constantly] being housed in jail cells that are extremely [overcrowded]," which is a "security issue." (Id.) Although "several dorms . . . have air conditioners," some detainees are "housed in fifty[-]man dorm[s] with one [oscillating] fan." (Id.). This creates a "hostile environment that is [waiting] to happen." (Id.)

Townsend states that his allegations violate the DOC's "Minimum Standards" for hygiene, overcrowding and access to the courts. (Id.)  He alleges that he did not sustain any injuries related to these events, (id. at 3), and requests as relief that the DOC implement corrective policies and procedures, as well as provide $9,000,000 in compensatory damages and punitive damages for emotional distress and pain and suffering (id. at 7).

## PROCEDURAL BACKGROUND

Townsend filed his complaint on April 30, 2012. (Docket Number ("Doc. No.") 2.) On June 11, 2012, the Honorable Richard J. Sullivan referred this case to a magistrate judge for general pretrial supervision and dispositive motions requiring a report and recommendation. (Doc. No. 11.) On July 12, 2012, defendants filed a motion to dismiss Townsend's claims. (Doc. No. 12.) Townsend did not timely oppose this motion, and so on August 14, 2012, the Honorable James L. Cott directed defendants to serve Townsend with their moving papers and ordered Townsend to file his opposition by September 11, 2012. (Doc. No. 15.) Judge Cott warned Townsend that if he did not file an opposition the Court would consider defendants' motion to be unopposed. (Id.) Townsend did not file opposition papers, and therefore the motion was fully briefed on September 11, 2012.[2] On November 8, 2012, the referral was reassigned to my docket. (Doc. Nos. 17-18.)

---

[2] The docket website confirms that Townsend is still incarcerated at the address on record, and defendants' moving papers and Judge Cott's order were mailed to him there. (See Doc. No. 16.)

**DISCUSSION**

Defendants argue that Townsend's complaint should be dismissed because Townsend: (1) does not allege Clemons or Gumsdere were personally involved in a constitutional violation; (2) lacks standing because he does not plead he was personally aggrieved; (3) does not allege constitutional violations; (4) does not adequately plead municipal liability; and (5) cannot claim compensatory relief because he has not suffered physical injury. (Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Br.") at 1.)

**I.      Statement of Law**

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). To state a legally sufficient claim, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). But a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555.) If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

*Pro se* litigants "are entitled to a liberal construction of their pleadings," and therefore their complaints "should be read to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted). But "complaints relying on the civil rights statutes are insufficient unless they contain some specific

4

allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).

In determining the sufficiency of a complaint, the Court may consider "the factual allegations in [the] . . . complaint, . . . documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

Furthermore, when a court is presented with an unopposed motion, it may not find for the moving party without reviewing the record and determining whether there is sufficient bases for granting the motion. See Kinlaw v. Walsh, 10 Civ. 7539 (RMB)(JLC), 2012 WL 2548437, at *1 (S.D.N.Y. June 29, 2012) (reviewing record when considering defendants' unopposed motion to dismiss *pro se* plaintiff's complaint); see also Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004) ("[C]ourts, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.") (citation and internal quotation marks omitted).

## II.   Standing Through Personal Injury

As a threshold issue, defendants argue that Townsend fails to allege personal injury. The Constitution limits the judicial power of federal courts to decide cases or controversies. See U.S. Const. art. III., § 2, cl. 1. To bring a claim for relief, a plaintiff must allege a concrete and particularized "injury in fact" fairly traceable to the challenged actions of defendants. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see ARKO Ivesticni Spolecnost, A.S. v. A.B. Watley, Inc., 01 Civ. 7693 (LAP), 2003 WL 1108135, at *2 (S.D.N.Y. Mar. 12, 2003) ("A

party must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975)). Indeed, personal injury is necessary to bring suit under § 1983. <u>Oliver v. Powell</u>, 250 F. Supp. 2d 593, 601 (E.D. Va. 2002) (prisoner could not maintain § 1983 action when he failed "to specify any defendants[] whose actions were fairly traceable to an actual injury"); <u>see</u> <u>Uzzell v. Scully</u>, 893 F. Supp. 259, 263 (S.D.N.Y. 1995) (prisoner could not bring § 1983 claim when placed in "keeplock" for disciplinary charges because he had no liberty interest, and thus suffered no injury).

  Townsend's claims do not establish personal injury. He pleads that there is not enough food to accommodate all the detainees, (Compl. at 4), but not that he went hungry. He pleads diabetic detainees are not provided with "[necessary] low sugar diet foods," (<u>id.</u>), but not that he is diabetic. He complains that the blankets are dirty and are dragged from place to place, (<u>id.</u>), that personal clothing is not allowed to be cleaned at the facility laundry, (<u>id.</u> at 5), and that many showers are not industrial cleaned, (<u>id.</u>), but does not plead that he was injured by the dirt. He pleads that living conditions are deplorable, (<u>id.</u> at 4), detainees must sleep close together, (<u>id.</u> at 5), there is overcrowding, (<u>id.</u>), and some dorms do not have air conditioners, (<u>id.</u>), but likewise does not plead that he was affected by these conditions. Indeed, the only potential personal injury that Townsend alleges is that when detainees are awoken for court appearances, "<u>we</u> are [constantly] being housed in jail cells that are extremely [overcrowded]." (<u>Id.</u>) (emphasis added). But although this allegation suggests Townsend's personal involvement, it does not suggest any injury suffered because of that overcrowding beyond an unspecified "security issue." (<u>Id.</u>) Indeed, when given the chance to describe the injuries that he suffered, Townsend writes that he

suffered "none." (<u>Id.</u> at 3.) Townsend's claims fail because he has not alleged a legally

cognizable personal injury.

## III.     Personal Involvement of Individual Defendants

Defendants also argue that Townsend has not alleged the personal involvement of

defendants in any alleged constitutional deprivations. "An individual cannot be held liable for

damages under § 1983 merely because he held a high position of authority, but can be held liable

if he was personally involved in the alleged deprivation." <u>Back v. Hastings on Hudson Union</u>

<u>Free School Dist.,</u> 365 F.3d 107, 127 (2d Cir. 2004) (citation and internal quotation marks

omitted). Personal involvement can be shown by:

> evidence that: (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation through a report
> or appeal, failed to remedy the wrong, (3) the defendant created a policy or
> custom under which unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom, (4) the defendant was grossly negligent in
> supervising subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference . . . by failing to act on information indicating
> that unconstitutional acts were occurring.

<u>Id.</u> (citing <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995)).

Dismissal of a defendant is warranted when a plaintiff fails to allege how that particular

defendant was personally involved in any of the actions or inactions that purportedly led to a

violation of the plaintiff's constitutional or federal rights. <u>Hemmings v. Gorczyk</u>, 134 F.3d 104,

109 n.4 (2d Cir. 1998); <u>Schwartz v. Dennison</u>, 518 F. Supp. 2d 560, 573 n.11 (S.D.N.Y. 2007)

(no personal involvement found when complaint was devoid of allegations "from which it can be

reasonably inferred that [defendants] created, or allowed to continue, [an impermissible]

policy").

Outside of naming them as defendants, Townsend does not mention Clemons or Gumsdere anywhere in his complaint or allege their personal involvement in any of the actions that led to the alleged deprivations of his constitutional rights. Clemons and Gumsdere, therefore, should be dismissed from the complaint. Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 435 (S.D.N.Y. 2004) (dismissing *pro se* complaint against individual named defendants not mentioned in body of complaint); Mabery v. Keane, 95 Civ. 1093 (JFK), 1998 WL 148386, at *3 (S.D.N.Y. Mar. 30, 1998) (mentioning defendants "only . . . in the caption of the Complaint . . . is not enough to establish personal involvement for § 1983 purposes"); see Back, 365 F.3d at 127-28 (granting summary judgment when there was no allegation that individual defendant engaged directly in any discriminatory conduct under § 1983).

Clemons and Gumsdere also cannot be held liable solely because of their supervisory capacities as Warden and Deputy Warden of Security at RNDC. The "bare fact that [a defendant] occupies a high position in the New York prison hierarchy" does not suffice to sustain a claim. Colon, 58 F.3d at 874. Townsend must allege their personal involvement, which he has not done. Collins v. Goord, 438 F. Supp. 2d 399, 420 (S.D.N.Y. 2006) (dismissing plaintiff's claims against DOC Commissioner when plaintiff did not allege sufficient personal involvement). Townsend also is foreclosed from arguing supervisory liability under a theory of *respondeat superior*. Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) ("supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*"; proof of linkage in prison chain of command similarly is insufficient) (citations omitted).

8

**IV.     Sufficiency of Constitutional Violation**

      Turning to the substance of the complaint, Defendants argue that Townsend's allegations do not rise to the level of constitutional deprivations. To allege a constitutional violation, a plaintiff must bring a claim pursuant to 42 U.S.C. § 1983. Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." Newton v. City of New York, 566 F. Supp. 2d 256, 269-70 (S.D.N.Y. 2008) (citing Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 159 (2d Cir. 2005)). To state a claim under § 1983, "a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution." Newton, 566 F. Supp. 2d at 270 (citing Palmieri v. Lynch, 392 F.3d 73, 78 (2d Cir. 2004)).

      It is unclear if Townsend was a pre-trial detainee or a post-conviction prisoner during the period giving rise to his claim. For constitutional purposes, however, the analysis is the same. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."). To allege a constitutional violation, a plaintiff must plead an objectively "serious deprivation," and that the officials who caused the harm acted with "deliberate indifference." Wilson v. Seiter, 501 U.S. 294, 302, 305 (1991); Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002).

      To allege the first prong, a "serious deprivation," a plaintiff must plead the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981), including the "basic human needs" of "food, clothing, shelter, medical care and reasonable

9

safety." <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993) (citation and internal quotation marks

omitted); <u>see</u> <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279 (2d Cir. 2006).

To allege the second prong, "deliberate indifference," a plaintiff must plead that a prison

official knew of and disregarded an "excessive risk to inmate health or safety," which requires

that "the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw that inference." <u>Farmer v. Brennan</u>,

511 U.S. 825, 837 (1994); <u>see</u> <u>Caiozzo</u>, 581 F.3d at 71 (plaintiff must show "that the

government-employed defendant disregarded a risk of harm to the plaintiff of which the

defendant was aware").

Townsend's allegations can be grouped into three potential violations: complaints about

food, sanitation and living conditions. None of his complaints, however, alleges "sufficiently

serious" deprivations or the "deliberate indifference" of a defendant.

### A. Temporary Deprivations

As an initial matter, Townsend provides little in the way of temporal context as to when

the violations occurred. He pleads various general allegations, but indicates that the "events

giving rise to [his] claim(s)" occurred on October 14, 2011, without clarifying whether or not all

of his allegations actually occurred on that day. (Compl. at 2.) Defendants argue that this

suggests that Townsend is pleading temporary deprivations only, and temporary deprivations do

not amount to the denial of "the minimal civilized measure of life's necessities." (Def. Br. at 10-

12.)

Defendants cite to cases when temporary deprivations did not create constitutional

deprivations. (<u>Id.</u>) But defendants' citations are not articulating a general rule; indeed, the length

of the deprivation is not in itself dispositive. See <u>Channer v. Mitchell</u>, 43 F.3d 786, 787-88 (2d

Cir. 1994) (remanding suit when district court did not address allegations that the deprivation of bed linen, pillow, or comfortable place to rest for two evenings violated the Eighth Amendment because "there is no *per se* bar to such a suit") (collecting cases); <u>see also</u> <u>Smith v. Carpenter</u>, 316 F.3d 178, 186 (2d Cir. 2003) ("In a case like this, however, where the prisoner is receiving appropriate on-going treatment for his condition, but, instead brings a narrower denial of medical care claim based on a temporary delay or interruption in treatment, the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner."); <u>LaReau v. MacDougall</u>, 473 F.2d 974, 978 (2d Cir. 1972) (five days in "strip cell [fell] below the irreducible minimum of decency required by the Eighth Amendment"); <u>Moss v. Ward</u>, 450 F. Supp. 591, 596-97 (W.D.N.Y. 1978) (withholding food for four consecutive days violated Eighth Amendment). To the extent defendants argue that the temporary nature of the deprivation by itself warrants dismissal of Townsend's complaint, (Def. Br. at 12), without looking into what was deprived, they are incorrect.

**B. Food and Diabetes**

Turning to his allegations, Townsend takes general issue with the food at RNDC, complaining that there is not enough food for "the vast amount of detainees," and that diabetics are not issued "the [necessary] low sugar diet foods." (Compl. at 4.) The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well[-]being of the inmates who consume it." <u>Robles v. Coughlin</u>, 725 F.2d 12, 15 (2d Cir. 1983). But a conclusory allegation that there is not enough food simply is not a "substantial deprivation" absent an allegation of actual harm. <u>McNatt v. United Manager Parker</u>, 99 Civ. 1397 (AHN), 2000 WL 307000, at *5-6 (D. Conn. Jan. 18, 2000) (allegation of small food portions, absent evidence that

11

prisoners suffered ill effects from these reduced portions, fails to state Eighth Amendment claim) (collecting cases). Townsend does not allege that he went without food. Moreover, he does not allege that a general lack of food was caused by any defendant's "deliberate indifference." Singh v. Fuller, 93 Civ. 5937 (CSH), 1999 WL 777872, at *3 (Sept. 30, 1999) (dismissing complaint when plaintiff failed to show alleged deprivation of food was caused by "deliberate indifference" of defendant).

Refusing a prisoner a necessary "special diabetic diet" could create a sufficiently serious condition. See Edmonds v. Cent. N.Y. Psychiatric Ctr., 10 Civ. 05810 (DAB)(KNF), 2011 WL 2207527, at *3-6 (S.D.N.Y. May 31, 2011), adopted by 2011 WL 3809913 (S.D.N.Y. Aug 25, 2011); Johnson v. Harris, 479 F. Supp. 333, 337 (S.D.N.Y. 1979). But Townsend simply alleges that "low sugar diet foods" were not issued. (Compl. at 4.) He does not allege that he actually was denied such foods, or indeed, that any defendant was "deliberately indifferent" to his actual dietary needs. Cf. Edmonds, 2011 WL 2207527, at *5-6.

**C. Sanitation**

Townsend also complains about sanitation. First, Townsend alleges that the RNDC's linen sheets are a "magnet for dust[,] bugs and other infectious germs." (Compl. at 4.) But dust, bugs and germs do not create a "serious deprivation" without additional pleadings Townsend has not provided. See Bess v. R.N.D.C. C-74, 11 Civ. 6272 (WFK), 2012 WL 34100, at *1-2 (E.D.N.Y. Jan. 6, 2012) ("vague allegations of unsanitary conditions," including that unit where prisoner was moved was "filthy to the core, . . . [with] dust & corrosion all over, [and] mildew & mice all over" did not create constitutional deprivation) (citation and internal quotation marks omitted); McCoy v. Goord, 255 F. Supp. 2d 233, 243, 260 (S.D.N.Y. 2003) (dismissing complaint although plaintiff alleged cell was infested with roaches).

12

Second, Townsend alleges that the blankets are dirty. (Compl. at 4.) But this also is insufficient to establish a constitutional violation absent any allegation of harm. McGee v. Pallito, 10 Civ. 11, 2011 WL 6291954, at *14 (D. Vt. Aug. 3, 2011) ("allegations of ants on [prisoner's] bedding are insufficient to state a constitutional violation, particularity when there is no accompanying allegation of harm or injury") (collecting cases); Myers v. City of New York, 11 Civ. 8525 (PAE), 2012 WL 3776707, at *8 (S.D.N.Y. Aug. 29, 2012) (alleging prisoner "had to sleep on 'rust laden sheets for over a month'" did not amount to constitutional violation when prisoner did not allege lack of opportunity or means to clean his sheets) (collecting cases).

Third, Townsend alleges that personal clothing is "not allowed to be cleaned at [the] facility laundry." (Compl. at 5.) To the extent he is alleging inadequate laundry services, he has not alleged a sufficiently "serious deprivation" because he has not plead he could not clean his clothes at all. See Myers, 2012 WL 3776707, at *8 (no due process violation when prisoner claimed laundry service had ceased, and clean clothes were in short supply, but did not allege he was denied opportunity or means to clean linens or clothes himself); Lunney v. Brureton, 04 Civ. 2438 (LAK)(GWG), 2007 WL 1544629, at *14 (S.D.N.Y. May 29, 2007) (alleging inadequate laundry services without alleging inability to wash clothing did not violate Eighth Amendment), adopted by 2007 WL 2050301 (S.D.N.Y. July 17, 2007). Townsend similarly has failed to allege a sufficiently "serious deprivation" to the extent he is complaining about the dirtiness of clothing. McGee, WL 6291954, at *8 ("allegation that [plaintiff] had to wear the same clothes for a significant period of time while at [prison] does not rise to the level of a constitutional violation") (collecting cases).

Indeed, courts have found more particular and severe allegations have not established a constitutional violation of sanitary conditions. See, e.g., Mabery, 1998 WL 148386, at *8

13

(conclusory allegations of unsanitary conditions "due to a lack of cleaning supplies, infrequent extermination of housing units (only one or two times yearly), poor ventilation in the shower and bathroom areas resulting in the seepage of 'stink' and moisture into the housing areas, and the nearby burning of raw sewage . . . that results in inmates having to breathe these fumes" do not state Eighth Amendment violations). Townsend, moreover, has not linked any of these alleged deprivations to defendants' "deliberate indifference."

### D. Living Conditions

Townsend next complains about the living conditions at RNDC, but similarly fails to plead constitutional deprivations. First, Townsend complains about overcrowding, alleging that detainees are "compel[led] to sleep close[] to other detainees," and some are housed in fifty-men dorms. (Compl. at 5.) But this level of overcrowding does not create a "serious deprivation" absent additional allegations Townsend does not provide. Myers, 2012 WL 3776707, at *6-8 (complaints about overcrowding where 60 detainees were housed in areas designed to hold only 50, and insufficient sinks and toilets were available, did not reach level of constitutional violation of due process rights); D'Attore v. New York City, 10 Civ. 3102 (JSR)(MHD), 2011 WL 3629166, at *6 (S.D.N.Y. June 2, 2011) ("overcrowding" of "less than sixty square feet of bed space" did not constitute "serious deprivation" absent specific allegations of deprivation), modified by 2011 WL 3629018 (S.D.N.Y. Aug. 17, 2011) (clarifying that dismissal of overcrowding claim was without prejudice). Temporary overcrowding in jail cells for court appearances, (Compl. at 5), similarly, is not a "serious deprivation." See Myers, 2012 WL 3776707, at *6.

Second, Townsend alleges that, although several dorms have air conditioners, other dorms must "bear the hot [humidity] with one fan." (Compl. at 5.) But uncomfortable dorms do

14

not create a "serious deprivation" absent additional pleadings of actual injury. <u>See, e.g.</u>, <u>Hall v. Perilli</u>, 03 Civ. 4635 (RCC)(AJP), 2004 WL 1068045, at *8 (S.D.N.Y. May 13, 2004) (report and recommendation collecting cases where temperature discomfort did not amount to constitutional violation). Finally, Townsend does not allege that any defendant was "deliberately indifferent" to his living conditions.

## V.   Additional Allegations

Townsend also makes three other potential claims for relief: (1) a denial of access to court; (2) violations of the DOC's "Minimum Standards;" and (3) that the DOC has failed to enforce a consent decree.

### A.  Denial of Access to Court

First, Townsend alleges a denial of access to court when he pleads that detainees are placed in crowded jail cells when they are taken for court appearances. (Compl. at 5.) But to state a claim for denial of access to the courts under § 1983, a prisoner "must demonstrate that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action." <u>Green v. Phillips</u>, 04 Civ. 10202 (TPG), 2006 WL 846272, at *5 (S.D.N.Y. Mar 31, 2006) (citation and internal quotation marks omitted). Townsend does not allege that he was prevented from attending his court appearances, and therefore, he cannot state a claim for denial of access to court.

### B.  Department of Correction Minimum Standards

Second, Townsend alleges that the conditions of his confinement violate the DOC's "Minimum Standards" regarding hygiene, overcrowding, and access to the Courts. (Compl. at 5.) But the violation of City Minimum Standards does not, on its own, violate a prisoner's constitutional rights. <u>Gamble v. City of New York ex rel. N.Y.C. Dep't of Corr.</u>, 04 Civ. 10203

15

(TPG), 2009 WL 3097239, at *5 (S.D.N.Y. Sept. 25, 2009); see Myers, 2012 WL 3776707, at *6 (finding violation of minimum City occupancy standards did not, on its own, violate prisoner's due process rights) (collecting cases).[3]

### C.  "Baer" Standards

Third, Townsend also states that the "New York City Department of Corrections has failed to enforce The Environmental Health that was stated by Judge Harold Baer Jr." (Compl. at 4.) Reading this as a request for injunctive relief, the Court notes that Townsend is no longer in DOC custody at the RNDC, but rather is incarcerated in the Great Meadow Correctional Facility. Under the Prison Litigation Reform Act, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation." 18 U.S.C. § 3626(a)(1). The Court of Appeals for the Second Circuit has held that "a transfer from a prison facility moots an action for injunctive relief against the transferring facility." Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996). Townsend's allegation of a violation of Judge Baer's consent decree fails because he is no longer at RNDC. See Hallett v. Davis, 11 Civ, 4646 (WHP), 2012 WL 4378020, at *1, *6 (S.D.N.Y. Sept. 25, 2012) (finding that prisoner's allegation that the DOC "failed to enforce environmental health standards stated by Judge Harold Baer Jr" did not state claim for injunctive relief when defendant was transferred out of DOC facility) (citation and internal quotation marks omitted). Townsend's concerns about the treatment of other detainees also do not entitle him to relief. See Hinck v. United States, 550 U.S. 501, 510 n.3 (2007) ("[It is a] general rule that a party must assert his own legal rights and interests, and cannot rest his

---

[3] Moreover, the DOC's Minimum Standards expressly allow for occupancy of 50 detainees or 60 sentenced inmates in a housing area. (Minimum Standards, Rules of the City of New York Bd. of Corr. (40 RCNY) § 1-04(c)(5)). Absent additional pleadings, Townsend's allegation that detainees are housed in a 50-man dorm, (Compl. at 5), does not allege a violation of DOC standards.

claim to relief on the legal rights or interests of third parties.") (citation and internal quotation marks omitted).

## CONCLUSION

For these reasons, I recommend that defendants' motion to dismiss be GRANTED in its entirety. Because I recommend dismissal based on several alternative grounds, I have not addressed defendants' remaining arguments. Because Townsend is a *pro se* plaintiff, I recommend that the dismissal of his complaint be with prejudice, but with leave to reopen within 30 days by filing an amended complaint that addresses the defects in his original complaint.

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Sullivan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

**SARAH NETBURN**
United States Magistrate Judge

DATED:    New York, New York
          January 30, 2013

18